NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROLAND T., *Appellant*,

*v.*

JESSICA D., R.H., *Appellees*.

No. 1 CA-JV 22-0084
FILED 2-7-2023

Appeal from the Superior Court in Navajo County
No. S0900SV202100006
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

The Rigg Law Firm PLLC, Pinetop
By Brett R. Rigg
*Counsel for Appellant*

Coronado Law Firm PLLC, Lakeside
By Eduardo H. Coronado
*Counsel for Appellee Jessica D.*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann[1] delivered the decision of the court, in which Presiding Judge Maria Elena Cruz and Judge Angela K. Paton joined.

---

**S W A N N**, Judge:

¶1        Roland T. ("Father") appeals the superior court's order terminating his parental rights to his child, R.H.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Around May 2015, Jessica D. ("Mother") learned she was pregnant with R.H. and informed Father that same month.  She also told Father her due date.  Soon after that conversation, Father introduced Mother to R.H.'s paternal grandmother and informed her they were having a child.  A little while later, Father and paternal grandmother gave Mother a crib.  Then, in August, Father attended Mother's ultrasound with her family.

¶3        According to Mother, after that, Father dropped out of her life.  According to Father, Mother learned about his criminal history and then refused to put him on the birth certificate and told him he was not R.H.'s father.  The parents had no further contact.

¶4        Father has never met R.H., who was born in January 2016.  He has not sent the child any cards, gifts, letters, or support.  In 2018, Father was sentenced to prison for a felony conviction, with a release date of January 2023.

---

[1]        Judge Peter B. Swann was a sitting member of this court when the matter was assigned to this panel of the court.  He retired effective November 28, 2022.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Swann as a judge *pro tempore* in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2022-162.

¶5        Meanwhile, Mother and R.H. had moved from the maternal grandparents' home into their own home.  In 2019, Mother married, and her husband ("Stepfather") has fathered R.H. since he was about two years old.  In January 2021, Mother petitioned to terminate Father's parental rights based on the abandonment and length-of-felony-sentence grounds.  A.R.S. § 8-533(B)(1), (4).  After a trial in January 2022, the superior court terminated Father's rights based on abandonment only.

¶6        Father appeals.

## DISCUSSION

¶7        Father argues insufficient evidence supports the court's finding that he abandoned R.H.

I.        REASONABLE EVIDENCE SUPPORTS THE COURT'S DETERMINATION THAT FATHER ABANDONED R.H.

¶8        Severance of a parental relationship may be warranted where the state proves one statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶ 12 (2000).  "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005).  The court must also find that severance is in the child's best interests by a preponderance of the evidence. *Id.* at 288, ¶ 41.

¶9        "We review an order terminating a parent's relationship with his or her child . . . in the light most favorable to sustaining the superior court's ruling." *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013).  This court "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) (citations omitted).  This court does not reweigh the evidence, but "look[s] only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶10        A parent may forfeit his parental rights if he abandons his child.  A.R.S. § 8-533(B)(1).  Abandonment occurs when the parent fails to "provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1).  Abandonment is measured by a parent's conduct, not the parent's subjective intent. *Michael J.*, 196 at 249, ¶ 18.  The court must consider whether the parent has

"provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal [parent-child] relationship." *Id.* at 249–50, ¶ 18.

¶11        Father contends that the evidence failed to show he intended to abandon R.H.  But the superior court must look to parents' actions, not their intent, in determining whether a parent has abandoned his child.  *Id.* at 249, ¶ 18 ("[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct."); *In re Appeal in Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994) (A parent must "act persistently to establish the [parent-child] relationship however possible and must vigorously assert his legal rights to the extent necessary.").  Here, reasonable evidence supports the court's finding that Father abandoned R.H. because he "failed to undertake any of the myriad responsibilities associated with parenting," leaving "those obligations to others to fulfill."

¶12        Nonetheless, Father argues that because Mother told him he was not R.H.'s father, he "did not have sufficient reason to believe that he was the father of R.H. and did not discover that he was indeed the father until the Termination proceeding."  But Father's uncertainty about his paternity does not justify abandonment.  *See In re Appeal in Maricopa Cnty. Juv. Action No. JS-8490*, 179 Ariz. 102, 106 (1994) ("[I]f a man has reasonable grounds to know that he might have fathered a child, he must protect his parental rights by investigating the possibility and acting appropriately on the information he uncovers.").

¶13        According to Father's own testimony, he knew or had reason to know that he had fathered a child with Mother.  Mother informed him she was pregnant with his child, Father celebrated with her family, Father gave Mother a crib, and Father was present at Mother's first ultrasound.  Father also testified that he believed the child was his until Mother abruptly, and only after learning about his criminal history, told him the child was not his.

¶14        As the superior court found, "[e]ven if Mother told him at some point that he was not the Father, he knew that there was a possibility that the child was his based on having intercourse with Mother at or near the time the child was conceived as well as being initially told that he was the father."  Father also testified that after Mother told him he was not the father, he asked for a paternity test, which further supports the court's finding that "he knew of the possibility of paternity."  Despite knowing of this possibility, Father never pursued his parental rights through Mother or

family court. Thus, reasonable evidence supports the court's finding that Father abandoned R.H.

¶15      Father argues alternatively that his abandonment was justified because Mother interfered with his ability to establish a relationship with R.H. But even according to Father, Mother's turnabout on his paternity came after months of her claiming the opposite. Nevertheless, Father accepted it as true and made no attempts to resolve the uncertainty. The record therefore does not support Father's contention that Mother persistently and substantially restricted his access to R.H. *Cf. Calvin B.*, 232 Ariz. at 293–94, ¶ 1.

¶16      Finally, Father asserts the superior court violated his due process rights by not ordering reunification services after he established paternity. Father, however, failed to raise this issue in the superior court, and he has therefore waived it on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶¶ 17–18 (App. 2014) (It is "incumbent on [a parent] to promptly bring [his] concerns to the attention of the juvenile court, thereby giving that court a reasonable opportunity to address the matter."). Even if Father's claim could be addressed on the merits, his argument would fail. A private party filed the petition for termination, and even if DCS were involved, DCS is not required to provide reunification services before seeking severance under the abandonment ground. *Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 66, ¶ 15 (App. 1999).

II.     REASONABLE EVIDENCE SUPPORTS THE COURT'S DETERMINATION THAT SEVERANCE WAS IN R.H.'S BEST INTERESTS.

¶17      Father also contends the superior court erred in finding severance was in R.H.'s best interests. In addition to finding a statutory ground for termination, the superior court must also determine what is in the best interests of the child by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 284, ¶ 22. Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35.

¶18      "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-*

*500274*, 167 Ariz. 1, 5 (1990) (citations omitted).  Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).  The court may find a child would benefit from termination if there is an adoption plan or if the child is adoptable, *id.* at 150–51, ¶¶ 13–14, or if the child "would benefit psychologically from the stability an adoption would provide," *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

**¶19**        Here, Father acknowledged that he has no relationship or bond with six-year-old R.H.  On the other hand, the court found that Stepfather "has been an integral part of [R.H.'s] life since he was 2 years old.  [Stepfather] has been a parental figure for [R.H.], and they have a meaningful parent[-]child relationship.  The child would benefit from the termination of [Father's] parental rights because it would allow for the stability and security of a stepparent adoption."  Reasonable evidence in the record supports these findings.

**¶20**        Father complains that he has had no opportunities to form a relationship with R.H. because of Mother's deception.  However, the record shows he had almost six years to assert his parental rights in some fashion and did not do so.  On this record, we find no error.

## CONCLUSION

**¶21**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA